Caldwell, J.
This is a case in quo warranto, of the State of Ohio on ■relation of Erasmus D. Sawyer against William C. Pollner.
I will read part of the agreed facts, that will sufficiently • state the nature of the case. And I will read only so much ■ as I care to consider in what T say:
“Fourth. At the annual election held on the first Monday, to-wit, the third day of April, 1899, John H. Farley was elected mayor of the city of Cleveland by a popular election.
“Fifth. On the tenth day of April, 1899, being the second Monday of April, John H. Farley took the oath of office as mayor of the city of Cleveland at 10 A. M., and at •the same time prepared and filed with H. H. Burgess of said city, his good and sufficient bond as such mayor, and ■while said Farley was assuming to act as such mayor, immediately thereupon Charles P. Salen delivered to said “John H. Farley, Mayor”, his written resignation as a ■member of the Board of Elections of the city of Cleveland, and the fact that it was done so, was published in the afternoon papers printed in said city and circulated throughout ■ said city.
“Sixth. At the time of delivering said written resignation to said Farley the said Charles P. Salen ijstended that it should be accepted by the said John H. Farley as mayor •and by no other person or officer, and was intended to take effect only upon its acceptance by said Farley as such may- or, but such intention was not expressed in said written resignation except that it was addressed: “John H. Farley, Mayor.”
“Seventh. On the 10th day of April, 1899, said Charles P. Salen prepared and signed a bond as director of accounts of the city of Cleveland, and procured the signatures of three sureties thereto on said bond,and on the same day he ■took the oath of office as director of accounts of said city before H. W. Canfield, a Notary Public, and prior to six •o’clock P. M. of said day.; which oath of office was printed *306 upon the back of said bond and was signed and sworn to by said Salen as aforesaid, but said bond with the oath written and signed on the back thereof was not approved by said Farley until after the city council of said city had met at 7:30 o’clock P. M. of said 10th day of April, 1899,
“Eighth. The fact that said Salen had delivered his resignation to the said Farley as aforesaid, was communicated to Mr. McKisson, who still claimed to be the mayor, shortly after noon of the 10th day of April, 1899, by various persons and through various sources, among others the newspapers of the city of Cleveland. At 6 o’clock P. M. on said day, Mr, McKisson, assuming to act as mayor, undertook to appoint E. D. Sawyer, the relator herein, as a member of the said Board of Elections for the unexpired term of Mr. Salen. Said appointment, was undertaken, was made in writing and delivered to said Sawyer at six o’clock P. M. of said day, and said Sawyer immediately thereupon took the oath required of persona duly appointed to said office of member of the Board of Elections of said city.
“Ninth. Mr. Sawyer, the relator herein, has ever since said time, attempted to assume the duties of said office by presenting himself from time to time at the office of the Board of Elections and demanding recognition and the right to act and participate as a member of said board.
“Tenth. Immediately after taking the oath of office anc] filing his bond at 10 o’clock as aforesaid, John H. Farley proceeded to the mayor’s office and announced that he was mayor of the city of Cleveland, and continued thereafter during that day to remain in and about said office and immediately entered upon the duties of the said office of may- or, Mr. McKisson denied Mr. Farley’s right to assume the duties of said office and continued to remain in and about said office and claimed still to be mayor of said city, and, during the afternoon of said day, performed various acts as such mayor, among others the approval of the bond of Thomas M. Kennedy as Prosecuting-Attorney of the police court.
“Eleventh. The council of the city of Cleveland, pursuant to its rules, met at 7:30 o’clock P. M. on the night of April 10th, 1899, and immediately thereafter on said night the city council approved the bond of the said John *307 H. Farley, which is the same bond hereinbefore referred to,. which was filed with the city clerk at 10 o’clock A. M. Immediately thereafter the council approved the appointment and bond of Charles P. Salen as director of accounts. of said city.
“Twelth, On the 19th day of Maj, 1899, mayor Farley appointed William C. Pollner, respondent herein, as a member of the Board of Elections to fill the vacancy caused by the resignation of the said Charles P. Salen for the unexpired portion of his said term, and immediately thereafter the said Pollner took the oath of office and proceeded to act-as a member of the Board of Elections of said city, and has ever since acted as a member thereof.
‘ ‘ Thirteenth. Immediately upon the approval of his bond by the council of the city of Cleveland on the night of April 10th as aforesaid, Charles P. Salen entered upon his - duties as director of accounts of the city of Cleveland, and he has ever since continued and now continues to hold said office.
“Fourteenth. That said Charles P. Salen never withdrew or attempted to withdraw his resignation delivered in - the manner and for the purpose aforesaid.
“Fifteenth. Prior to 10 o’clock A. M. on the 10th day of April, 1899, mayor McKisson was serving his second term as mayor of the city of Cleveland, having been elected thereto at the annual election held on the 8th day of April, 1897, for the term of two years as provided by law.
“Sixteenth. Mayor Farley did not file any expense-statement or account of any kind, character or description, with the clerk of the courts of Cuyahoga county, Ohio, under section á of the Act of the General Assemblv, passed - April 8, 1896.”
And there are admissions here that Mr. Farley had not filed with the county clerk a copy of his expense account at the time on the 10th of April; he had filed one with the • Board of Elections,and he supposed that the Board of Elections filed a duplicate with the clerk,and it was not his duty to do it. And the clerk of the Board of Elections filed' said statement on the 18th day of April, 1899.
Then there is an agreement here that at the time Sawyer- *308 was appointed by mayor McKisson to serve on the Board of Elections, that he was then serving as one of the two persons appointed to act with the Prosecuting-Attorney of the county in reviewing the commissioners’ annual report.
The relator claims in this action, it being an action brought in quo warranto, to oust from office Mr. Pollner,and induct the relator into the office that Mr. Pollner is now • occupying. And the contention is: First, that there was -a vacancy at the time that Mr. Sawyer was appointed, in the office of the Board of Elections.
The second matter of contention is, that on the 10th day • of April, 1899, at 6 o’clock, Mr. McKisson was the mayor ■ of the city of Cleveland, and John H. Farley was not the mayor.
I think I will go no further in either stating the contentions of the parties, or in considering any questions that .have been argued.
This resignation of Mr. Salen was made out to “John H. Farley, Mayor’’, and handed to him on the 10th day of April, 1899, but there was nothing done with it by Mr. Farley one way or the other until after the council had met in the evening of that day.
An intention on the part of Mr. Salen to resign that office is of no consideration whatever; it would accomplish nothing whatever — the mere intention. That intention ■must be manifested in some way, and the usual way and the way required in order to accomplish it, is to convey his ■resignation to the person who is by law entitled to fill the ■ office. If that is conveyed to a stranger, it amounts to -nothing more than a secret intention. If Mr. Farley was not mayor of the city of Cleveland at the time that Mr. - Salen’s resignation was handed to him, then it was no more ■than handing it to a stranger who had no connection with this affair whatever. It was a matter that could not relate rforward or backward. So that, we hold, in regard to this *309 resignation of Salen, if Farley was not mayor at the time that those papers was handed to him, it had no effect in law whatever, and there was no resignation.
Lacking entirely the elements of an officer resigning, he must do something beyond his resignation, and that something is to convey the intelligence of his resignation to the officer who has the power to fill the vacancy.
Now, if there was no vacancy, if this was conveyed to Farley, and Farley was not mayor of the city of Cleveland, the appointment of anyone to fill a place, not vacant, is void in law.
So if there was no resignation,- there could be no legal appointment. It necessarily follows from this, that either Farley was mayor at that time, or there was no resignation of Salen. It follows also, if Farley'was not mayor, there was no vacancy, and there could be no appointment. The question hinges somewhat upon who was mayor at that time. For myself, I doubt very much if this court has the authority to determine that question. But still, we will, as the facts have gone.
I know of no way in which an officer can be attacked as to his authority to act, whether it be on one particular occasion, whether it be for a day, whether it be for a year, whether it be for a term- — -no difference how long a time, I know of no authority to question his right to act as mayor or in such a way as to affect him, at least, without bringing an action in quo warranto directly, wherein he is made a party, wherein he is made responsible.
This proceeding of quo warranto may be brought to try the title to the office — often is. It is often brought to obtain possession of an office and to. remove an incumbent and to test the validity of a statute under which the incumbent’s office was created, and it is a question to test the right of *310 an officer to do certain acts. It has been used in all these offices in various ways by the courts of .this country — but I drop that matter.
I proceed upon an agreed statement of facts to determine who was mayor upon the 10th day of April, 1899.
There is no time fixed by statute, when the mayor takes his seat. He is elected. The statute prescribes that he shall take an official oath, and that he shall file a good and sufficient bond which shall be approved by the city council.
The contention of the relator is, in this case, that, until he is elected, has taken the oath of office, has filed a bond and that bond been accepted by the city council, that he is not mayor, and can not act as mayor legally.
On the other hand, the respondent claims that the law is if there is no time fixed by statute when the officer shall take his office, shall enter upon his duties, then his term commences immediately if he sees fit to enter upon the duties of it and, if he does not, it is a mere waiver upon his part. . And secondly, that the requiring of the oath, that the requiring of the bond or any other thing that the statute may require, although the statute may be explicit, is .merely directory language,and is not mandatory, and I believe the courts in this country now quite unanimously and, I do not know but entirely, say so at this time, that language of that kind is merely directory, and is not mandatory 'language.
But Mr. Farley had taken the oath and had filed a good ¡and sufficient bond with the city clerk at the time that he .undertook to act as mayor on the 10th of April, 1899, when ■he assumed the duties of his office, when the user commenced on the 10th of April, 1899. It is clear to our minds that if the council had refused to accept that bond, .and refused to acknowledge it, or by any misfortune had been unable to act upon that bond, it would have deprived 'Mr. Farley of being mayor.
McKisson & Boyd, for Plaintiff.
Kaiser & Taft, for Defendant.
The authority seems to be almost unanimous that in a statute like this, and where the same things are required to be done by the mayor — the law seems to be quite unanimous that he may merely enter upon the office by declaring himself the officer, and gc to work and perform the duties, and that the user with the election makes him the officer, and that both of them are required, and the bond also, yet they are not conditions precedent to his entering upon his office. This has been found to be almost a necessity in order that people may carry out their will, because there are so many things that may intervene not to allow an officer to take the oath or file his bond. It becomes almost necessary that the will of the people may not become prostrated, and the courts have recognized that, and from that necessity has grown up the universal ruling that the occupier of the office, that the user of the office has determined whether the party is the officer that he pretends to be.
Without going any further in the discussion of the questions that have been raised before us, which are entirely needless, we determine this case by rendering judgment for the defendant and dismissing plaintiff’s petition.